# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

| | | |
|---|---|---|
| **In re** | ) | **Chapter 7** |
| | ) | |
| **Knight Resources, LLC,** | ) | **Case No. 17-51280** |
| | ) | |
| **Debtor.** | ) | |
| | ) | |
| | ) | |

## MOTION FOR THE ENTRY OF ORDERS (I) APPROVING THE SALE OF ASSETS FREE AND CLEAR, (II) APPROVING BID PROCEDURES IN CONNECTION WITH THE SALE, (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS AND LEASES AND APPROVING THE PROCEDURES TO BE EMPLOYED WITH ASSUMPTION AND ASSIGNMENT, (IV) APPROVING DEBTOR'S FORM OF NOTICE, AND (V) GRANTING RELATED RELIEF

Lucy G. Sikes, solely in her capacity as chapter 7 trustee (the "Trustee") for the estate of Knight Resources, LLC, submits this motion (the "Motion"), pursuant to 11 U.S.C. §§ 105, 363 and 365 of the United States Bankruptcy Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking the entry of Orders (i) approving the sale of assets free and clear; (ii) approving bid procedures in connection with the sale; (iii) approving the assumption and assignment of certain contracts and leases and approving the procedures to be employed with assumption and assignment; (iv) approving the Trustee's form of notice; and (v) grating related relief. In support, the Trustee represents:

## Jurisdiction and Venue

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. The subject matter of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this district pursuant to 28 U.S.C. § 1408. The statutory predicates for the relief sought in this Motion include Bankruptcy Code §§ 105, 363 and 365 and Bankruptcy Rules 2002, 6004, 6006 and 9019.

## General Background

2.      This case was commenced on September 29, 2017 by the filing of a voluntary petition. The Trustee was appointed trustee on September 29, 2017 and remains the duly appointed Chapter 7 Trustee in this case.

3.      The Debtor was in the business of oil and gas exploration and production. Over time, the Debtor acquired "working interests" in numerous "prospects," each comprised of oil and gas leases and wells. Each prospect is typically owned by multiple parties and governed by one or more joint operating agreements or similar contracts. Under each joint operating agreement, one party (referred to as the "operator") generally has the exclusive right to conduct operations. Each operator may drill several wells in an effort to discover commercial quantities of hydrocarbons. Upon a thorough review by the Trustee, it appears that the estate owns a working interest in numerous individual wells, including the working interest that she is selling through this motion.[1]

---

[1] For an overview of the estate's overall oil and gas holdings, *see* ¶¶ 3-19 of the Trustee's *Motion to Abandon Estate's Interests in Oil and Gas Property Under 11 U.S.C. § 554 and Notice of Rejection of Related Executory Contracts as a Matter of Law Under § 365(d)(1)* [Dkt. 26].

MOTION FOR THE ENTRY OF ORDERS (I) APPROVING THE SALE OF ASSETS FREE AND CLEAR, (II) APPROVING BID PROCEDURES IN CONNECTION WITH THE SALE, (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS AND LEASES AND APPROVING THE PROCEDURES TO BE EMPLOYED WITH ASSUMPTION AND ASSIGNMENT, (IV) APPROVING DEBTOR'S FORM OF NOTICE, AND (V) GRANTING RELATED RELIEF

17-51280 - #45   File 04/19/18   Enter 04/19/18 16:13:06   Main Document      Pg 2 of 26

4.     The Trustee has diligently sought potential purchasers for the estate's assets and that search has recently culminated in that certain Asset Purchase Agreement (the "Stalking Horse Agreement," attached hereto as **Exhibit 1**) by and between the Trustee on the one hand, and Fieldwood Energy Offshore LLC (the "Purchaser"), on the other, dated as of April 10, 2018, with an effective date of January 1, 2018.

5.     A summary of the terms of the proposed sale to Purchaser under the Stalking Horse Agreement are as follows:[2]

| Term Summarized | Stalking Horse Agreement |
| --- | --- |
| "Purchased Assets" | Ship Shoal 253 – OCS – G- 1529, Ship Shoal Block 252 #F4, Federal Offshore lease OCS- G 1529, as to Operating Rights Covering the NE/4 and N/2SE/4 of Block 252, Ship Shoal Areas, South Addition, from 11,934' TVD down to 13,513 TVD |
| "Assumed Contracts" | All executory contracts related to the Purchased Assets. |
| "Purchase Price" | Cash of $550,000.00 |
| "Deposit" | Cash of $50,000.00 |

---

[2] This section is intended as a summary. For a full recitation of all terms and conditions, parties should consult the Stalking Horse Agreement attached hereto. In the event of any conflict between the terms it and any Order of this Court, the Order shall control.

| "Closing" | The sale of the Purchased Assets shall be closed within five (5) business days from the entry of the Sale Order. |
|---|---|

## Relief Requested

6.     The Debtor seeks the entry of two Orders, each substantially in the form attached to this motion.

7.     The first order (the "Bid Procedures Order," attached hereto as **Exhibit 2**)

MOTION FOR THE ENTRY OF ORDERS (I) APPROVING THE SALE OF ASSETS FREE AND CLEAR, (II) APPROVING BID PROCEDURES IN CONNECTION WITH THE SALE, (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS AND LEASES AND APPROVING THE PROCEDURES TO BE EMPLOYED WITH ASSUMPTION AND ASSIGNMENT, (IV) APPROVING DEBTOR'S FORM OF NOTICE, AND (V) GRANTING RELATED RELIEF

17-51280 - #45   File 04/19/18   Enter 04/19/18 16:13:06   Main Document   Pg 4 of 26

8.   The proposed deadlines to be established by this motion are:[3]

| Proposed Action | Proposed Deadline (all times central) |
|---|---|
| Due Diligence Period End | June 7, 2018 |
| Bid Deadline | June 8, 2018 @ 5:00 p.m. |
| Executory Contract Cure Schedule Filed | May 29, 2018 |
| Auction in Open Court (if applicable) | June 12, 2018 @ 9:00 a.m. |
| Sale Hearing in Open Court | June 12, 2018 @ 9:00 a.m. |

9.   The second order (the "Sale Order," attached hereto as **Exhibit 3**) (a) authorizing the Sale of the Purchased Assets to the highest and best bidder, free and clear of liens, claims and interests, with liens, claims and interests attaching to the proceeds, by and through the relevant Purchase Agreement; (b) approving the Purchase Agreement of the (ii) the highest and best bidder (the "Successful Bidder") and (ii) the second highest and best bidder (the "Backup Bidder"); (c) determining that the Successful Bidder and Backup Bidder are good faith purchasers pursuant to 11 U.S.C. § 363(m); (d) approving the Assumption and Assignment of the Contracts and Leases, if any; (e) abrogating the fourteen (14) day stay imposed by FED. R. BANKR. P. 6004(h); and (f) other related relief.

---

[3] The deadlines in this table are *proposed* deadlines as the actual deadlines will be set by the Court.

MOTION FOR THE ENTRY OF ORDERS (I) APPROVING THE SALE OF ASSETS FREE AND CLEAR, (II) APPROVING BID PROCEDURES IN CONNECTION WITH THE SALE, (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS AND LEASES AND APPROVING THE PROCEDURES TO BE EMPLOYED WITH ASSUMPTION AND ASSIGNMENT, (IV) APPROVING DEBTOR'S FORM OF NOTICE, AND (V) GRANTING RELATED RELIEF

# I.     The Sale Free and Clear

## A.     Approval of Sale under § 363(b)(1)

10.     This Motion contemplates that the Successful Bidder will buy the Purchased Assets through the relevant Purchase Agreement.  This purchase will be accomplished pursuant to 11 U.S.C. § 363, which provides that the Trustee, "after notice and a hearing, may […] sell […], other than in the ordinary course of business, property of the estate."[4]

11.     The Court should approve the Sale of the Purchased Assets to Purchaser if it finds that the Trustee demonstrates a sound business reason for the sale and the parties acted in good faith to sell the Purchased Assets at a fair and reasonable price.[5]  Section 105(a) provides in relevant part that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."[6]

12.     Courts typically consider the following four factors in determining whether a proposed sale satisfies this standard: (a) whether a sound business justification exists for the sale, (b) whether adequate and reasonable notice of the sale was given to interested parties, (c) whether

---

[4]   11 U.S.C. § 363(b)(1). *See Stephens Indus. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986) ("bankruptcy court can authorize a sale of all a Chapter 11 debtor's assets under [Section] 363(b)(1) when a sound business purpose dictates such action."); *In re Gucci*, 126 F. 3d 380, 387 (2d Cir. 1997) ("A sale of a substantial part of a Chapter 11 estate may be conducted if a good business reason exists to support it."); *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *In re Chateaugay Corp.*, 973 F. 2d 141, 143 (2d Cir. 1992); *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct.").

[5]   *See In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983) (holding that the proper standard to use when considering a proposed motion to sell is the business judgment test); *In re Continental Air Lines, Inc.*, 780 F.2d 1223 (5th Cir. 1986) (following *Lionel* in requiring a "business justification for using, selling, or leasing the property outside the ordinary course of business"). *See also In re 240 N. Brand Partners*, 200 B.R. 653, 659 (9th Cir. B.A.P. 1996) (citing to *Lionel* for proposition that "debtors who wish to utilize section 363(b) to dispose of property of the estate must demonstrate that such disposition has a valid business justification.").

[6]   11 U.S.C. § 105(a).

the sale will produce a fair and reasonable price for the property, and (d) whether the parties have acted in good faith.[7]

13.    Once a trustee articulates a valid business reason for a sale, the business judgment rule acts as a presumption that the trustee has acted on an informed basis, in good faith, and in the honest belief that the sale is in the best interests of the estate.[8]

14.    The Trustee's decision to sell the Purchased Assets is based on its sound business judgment. The Trustee seeks to liquidate the estate so that she may justly and equitably compensate creditors. The sale of the Purchased Assets will generate value for the estate, and expedite payment to the holders of allowed claims. Further, the proposed Bid Procedures provide an opportunity for the Purchased Assets to be further exposed to the market thereby providing the potential for an even larger recovery for the estate.

15.    Because of the Trustee's marketing efforts, the Sale will produce a fair and reasonable price for the Purchased Assets. The Purchased Assets have been exposed to the market for a considerable length of time as the Trustee has solicited offers from all of the estate's related working interest holders and operators. The Trustee pre-selected for these parties because they are already obligated on the P&A liability associated with the various interests. In addition, the proposed Sale will now be further exposed to the market in order to solicit an overbid. Through this process the Trustee is assured of achieving the maximum value for the Purchased Assets.

---

[7] *See, e.g., In re Weatherly Frozen Food Group, Inc.*, 149 B.R. 480, 483 (Bankr. N.D. Ohio 1992); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991).

[8] *See In re Gulf States Steel Inc. of Ala.*, 285 B.R. 497, 514 (Bankr. N.D. Ala. 2002) ("The Trustee is responsible for the administration of the estate and his or her judgment on the sale and the procedure for the sale is entitled to respect and deference from the Court, so long as the burden of giving sound business reasons is met.").

16.     The parties have acted in good faith.  The Stalking Horse Agreement is the culmination of the Trustee's search for a buyer and was extensively negotiated at arms-length between the parties.  The Purchaser and the Trustee had no connection whatsoever prior to the commencement of negotiations between them.

17.     Here, each of the preceding four factors has been satisfied.  The Trustee currently has inadequate liquidity to operate and is tasked with liquidating the Purchased Assets.  The orderly sale of the Purchased Assets will provide cash for the benefit of the creditors.  As discussed above, the Trustee will be providing adequate and reasonable notice to interested parties of the opportunity to bid on the Purchased Assets and of the opportunity to object to the Sale of those assets or to provide a higher purchase price.[9]  The procedure proposed herein will provide for an open and competitive bidding process for the Purchased Assets.  The Trustee is proceeding in good faith and will make a showing at the Sale Hearing that the Purchaser has acted in good faith.  Courts generally conclude that parties have acted in good faith with respect to a proposed sale if the purchase price is adequate and reasonable and the terms of the sale are disclosed fully.[10]

18.     As such, the Court should approve the Sale of the Purchased Assets pursuant to the Bid Procedures proposed herein.

### B.     Approval of the Sale Under § 363(f)

---

[9] *See, e.g., Folger Adam Security Inc. v. DeMatteis/MacGregor*, 209 F. 3d 252, 265 (3d Cir. 2000) (stating that notice is sufficient if it includes "the time and place of any public sale, the terms and conditions of any private sale, states the time for filing objections and, if real estate is being sold, provides a general description of the property"); *In re WBQ P'ship*, 189 B.R. 97, 103 (Bankr. E.D. Va. 1995) ("notice is sufficient if it includes the terms and conditions of the sale, if it states the time for filing objections, and if the estate is selling real estate, it generally describes the property") (quoting *In re Karpe*, 84 B.R. 926, 929 (Bankr. M.D. Pa. 1988)).

[10] *See, e.g., In re Abbotts Dairies of Pa., Inc.*, 788 F. 2d 143, 149-50 (3d Cir. 1986).

MOTION FOR THE ENTRY OF ORDERS (I) APPROVING THE SALE OF ASSETS FREE AND CLEAR, (II) APPROVING BID PROCEDURES IN CONNECTION WITH THE SALE, (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS AND LEASES AND APPROVING THE PROCEDURES TO BE EMPLOYED WITH ASSUMPTION AND ASSIGNMENT, (IV) APPROVING DEBTOR'S FORM OF NOTICE, AND (V) GRANTING RELATED RELIEF

19.     Pursuant to this motion, the Trustee also requests authorization to sell the Purchased Assets free and clear of any liens, claims, encumbrances, or other interests that may be asserted against the Purchased Assets.  Section 363(f) provides for the sale of property of the estate by the debtor "free and clear of any interest in such property of any entity other than the estate."[11]  Such "free and clear" provision permits a sale free and clear of interests beyond liens and permits a sale free and clear of claims,[12] contractual rights,[13] and statutory interests.[14]

20.     Section 363(f) permits a debtor to sell "free and clear" of an interest if any one of the following conditions is satisfied:

1)     applicable nonbankruptcy law permits the sale of such property free and clear of such interest;

2)     the lienholder or claimholder consents;

3)     such interest is a lien, and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

4)     such interest is in bona fide dispute; or

5)     the lienholder or claimholder could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.[15]

---

[11] 11 U.S.C. § 363(f).

[12] *In re Trans World Airlines, Inc.*, 322 F.3d 283 (3d. Cir. 2003).

[13] See *Unsecured Creditors' Comm. of Robert L. Helms Constr. & Development v. Southmark Corp.*, 139 F.3d 702 (9th Cir. 1998).

[14] See *Precision Indus., Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 543-548 (7th Cir. 2003)).

[15] 11 U.S.C. § 363(f).

9

MOTION FOR THE ENTRY OF ORDERS (I) APPROVING THE SALE OF ASSETS FREE AND CLEAR, (II) APPROVING BID PROCEDURES IN CONNECTION WITH THE SALE, (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS AND LEASES AND APPROVING THE PROCEDURES TO BE EMPLOYED WITH ASSUMPTION AND ASSIGNMENT, (IV) APPROVING DEBTOR'S FORM OF NOTICE, AND (V) GRANTING RELATED RELIEF

17-51280 - #45  File 04/19/18  Enter 04/19/18 16:13:06  Main Document    Pg 9 of 26

In addition, a court may authorize the sale of a debtor's assets free and clear of any liens, claims, or encumbrances under Section 105 of the Bankruptcy Code.[16]

21.     While Section 363(f) permits the sale of assets "free and clear of any interests," the term "any interest," as used in section 363(f), is not defined anywhere in the Bankruptcy Code.[17] In *Folger Adam*, the Third Circuit specifically addressed the scope of the term "any interest."[18] The Third Circuit observed that while some courts have "narrowly interpreted that phrase to mean only *in rem* interests in property," the trend in modern cases is towards "a broader interpretation which includes other obligations that may flow from ownership of the property."[19]  As determined by the Fourth Circuit in *In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 581-582 (4th Cir. 1996), a case cited approvingly and extensively by the Third Circuit in *Folger Adam*, the scope of 11 U.S.C. § 363(f) is not limited to *in rem* interests.  Thus, the Third Circuit in *Folger Adam* stated that *Leckie* held that the debtors "could sell their assets under § 363(f) free and clear of successor liability that otherwise would have arisen under federal statute."[20]

22.     Section 363(f) is drafted in the disjunctive.  Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the Estate's Sale of the Purchased Assets

---

[16] *See In re White Motor Credit Corp.*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) ("Authority to conduct such sales [free and clear of liens] is within the court's equitable powers when necessary to carry out the provisions of Title 11.").

[17] *Folger Adam Security v. DeMatteis/MacGregor, JV*, 209 F.3d 252, 259 (3d Cir. 2000).

[18] *Id.* at 258.

[19] *Id.* at 258 (citing 3 COLLIER ON BANKRUPTCY 363.06[1]).

[20] *Folger Adam*, 209 F.3d at 258.

10

MOTION FOR THE ENTRY OF ORDERS (I) APPROVING THE SALE OF ASSETS FREE AND CLEAR, (II) APPROVING BID PROCEDURES IN CONNECTION WITH THE SALE, (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS AND LEASES AND APPROVING THE PROCEDURES TO BE EMPLOYED WITH ASSUMPTION AND ASSIGNMENT, (IV) APPROVING DEBTOR'S FORM OF NOTICE, AND (V) GRANTING RELATED RELIEF

17-51280 - #45  File 04/19/18  Enter 04/19/18 16:13:06  Main Document      Pg 10 of 26

free and clear of all interests and claims, except with respect to any interests and claims that may be assumed liabilities under the applicable Purchase Agreement.[21]

23.     The Purchased Assets are comprised of the Estate's "Working Interest" in an offshore Oil and Gas Lease, namely Ship Shoal 253 – OCS – G- 1529, Ship Shoal Block 252 #F4 (the "Lease") and related rights and assets.   The Estate's Working Interest in the Lease is created under that Offshore Operating Agreement by and among various entities, dated March 30, 2009 ("Lease Operating Agreement" a filed memorandum copy of which is attached hereto as **Exhibit 4**).  Louisiana and many other oil-producing states treat a mineral lease as a conveyance of a real property interest, such as a deed, creating a fee simple determinable estate in the lessee.[22]

24.     In Louisiana, liens and mortgages affecting Oil and Gas leases are filed in the public records of the nearest parish, which in the case of the Lease, is Terrebonne.  Attached hereto as **Exhibit 4** is the result of the Trustee's search of the mortgage records affecting the real property being sold through this Motion.   Of the items indicated in the attached search, only the Lease Operating Agreement would operate to create a lien on the Purchased Assets.  Under the Lease Operating Agreement, the Debtor (and the other non-operating parties), grants to the operator (currently the Purchaser), a lien on all of the Debtor's oil and gas rights under the Lease Operating Agreement, as security for all obligations to the operator thereunder.   The Lease Operating

---

[21] *See Citicorp Homeowners Services, Inc. v. Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988).

[22] Compare *Texaco, Inc. v. Louisiana Land and Exploration Co.*, 136 B.R. 658 (M.D. La. 1992) (oil and gas leases are executory contracts) with *In re WRT Energy Corporation*, 202 B.R. 579 (Bankr. W.D. La. 1996) (the Court rejected the conclusion of the Court in *Texaco* and found that the oil and gas lease was not executory).

Agreement was filed in the records of Terrebonne Parish so as to perfect the lien in the Purchased Assets.[23]

25.      The Purchaser, as the record Operator for the Lease, has filed a secured claim which could affect the Purchased Assets.   A copy of the Purchaser's Proof of Claim is attached hereto as **Exhibit 6**.   As will be noted, $55,380.63 of the Purchaser's claim is attributable to sums due to the Purchaser, as operator under the Lease Operating Agreement.

26.      In light of the above, the Purchaser will be provided with a credit bid in the amount of the Purchaser's Secured Claim.   Any competing bidder will be required under the Bidding Procedures to provide an initial bid that includes payment of the Purchaser's Secured Claim. Because Oil and Gas leases are generally treated as real property interests, the Trustee submits that filings under the Louisiana Uniform Commercial Code would be ineffective as to the Purchased Assets.   In an abundance of caution, the Trustee also attaches hereto as **Exhibit 7,** the result of the Trustee's search of the uniform commercial code filings in Louisiana (the proper location for perfection of UCC security interests against the estate).   None of the creditors shown in UCC filings have filed secured claims in this matter.   Which are summarized as follows:

---

[23] The $55,380.63 is also considered a cure payment for the assignment of the underlying contracts associated with the working interest in the Lease, including without limitation, the Lease Operating Agreement. The Purchaser has agreed in the Stalking Horse Agreement that if it is the Successful Bidder as to the Purchased Assets, it will itself satisfy the cure payment as a contract obligation (Section 4.2 of the Stalking Horse Agreement).   Any competing bidder would also be required to make such cure payment under Section 4.2 of the Overbid Purchase Agreement.

MOTION FOR THE ENTRY OF ORDERS (I) APPROVING THE SALE OF ASSETS FREE AND CLEAR, (II) APPROVING BID PROCEDURES IN CONNECTION WITH THE SALE, (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS AND LEASES AND APPROVING THE PROCEDURES TO BE EMPLOYED WITH ASSUMPTION AND ASSIGNMENT, (IV) APPROVING DEBTOR'S FORM OF NOTICE, AND (V) GRANTING RELATED RELIEF

| Lien Filing Date | Number | Secured Party | Collateral |
|---|---|---|---|
| 6/14/12 | 51-5671 | Helis Oil & Gas | Oil & gas, proceeds, fixtures, movable property relating to Lease OCS-G 5502 |
| 6/27/13 | 17-1391823 | Wells Fargo, Assigned to Cantor Fitzgerald | All Assets |
| 2/8/16 | 55-1500085 | Operating Agreement parties | Lease OCS-G 19839, OA and all associated assets and proceeds |
| 8/10/16 | 55-1513929 | Lease Operating Agreement parties | OCS-G 252, SS 252, OA and all assets, equipment and agreements and associated production and proceeds |
| 4/7/17 | 28-498737 | First National Bank of Jeanerette | General Intangibles including certain insurance policies |

27.     In addition, certain filings relating to offshore Oil and Gas interests are required by the United States Bureau of Ocean Energy Management ("BOEM"). The results of a BOEM records search is attached hereto as **Exhibit 8**.

28.     As shown on the BOEM records, only items 5, 6 and 7 show interests granted by the Debtor, and all of these items deal with the Debtor's assignment of various overriding royalty interests as to the Debtor's interest in the Lease, including the following (the "Overriding Royalty Parties"): (i) Assignment of Overriding Royalty Interest from Knight Resources, LLC, in favor of Strat Energy & Consulting, Inc. dated May 14, 2015; (ii) Assignment of Overriding Royalty Interest from Knight Resources, LLC, in favor of James A. Bibby dated May 14, 2015; (iii)

MOTION FOR THE ENTRY OF ORDERS (I) APPROVING THE SALE OF ASSETS FREE AND CLEAR, (II) APPROVING BID PROCEDURES IN CONNECTION WITH THE SALE, (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS AND LEASES AND APPROVING THE PROCEDURES TO BE EMPLOYED WITH ASSUMPTION AND ASSIGNMENT, (IV) APPROVING DEBTOR'S FORM OF NOTICE, AND (V) GRANTING RELATED RELIEF

Assignment of Overriding Royalty Interest from Knight Resources, LLC, in favor of Clifford T. Crowe dated May 14, 2015.[24]

29.    A royalty interest is an interest in oil and gas produced at the surface, free of the expense of production.  In Louisiana, an overriding royalty is a nonpossessory "right to receive and collect a fraction or a percentage of the production of minerals . . . free of drilling and production costs."[25]  Since royalty interests affect the extracted minerals themselves, the royalty interests of the Overriding Royalty Parties set forth in Exhibit 6 do not encumber or otherwise attach to the proceeds of the sale of the Purchased Assets, as the Trustee is not selling extracted minerals.

30.    It should be noted, however, that the Trustee is not by this Motion seeking to strip the Purchased Assets of the royalty interests of the Overriding Royalty Parties—only to proceed with the sale of the Purchased Assets and distribute the proceeds of such sale without regard to said royalty interests.  Said royalty interests would continue to affect extracted minerals to the same extent as they did prior to the proposed sale.

31.    In this case, sale under Section 363(f) "free and clear" of the above interests is appropriate because:

1)    applicable nonbankruptcy law permits the sale of such property free and clear of such interest;

2)    the lienholder or claimholder consents;

---

[24] The Overriding Royalty Parties and their agreements are also shown in the immovable property search attached as Exhibit 5, with duplicate copies of the Strat Energy & Consulting agreement filed.

[25] *In re: ATP Oil & Gas, OHA Investment Corp. v. Schlumberger Technology Corp et. al,* No. 17-20224, p8, United States Court of Appeals, Fifth Circuit, April 17, 2018, citing William & Meyers, *Oil and Gas Law,* Sec. 418.1 (2017) and *Total E & P USA Inc. v. Kerr-McGee Oil and Gas Corp.,* 719 F3d 424 (5th Cir. 2013).

MOTION FOR THE ENTRY OF ORDERS (I) APPROVING THE SALE OF ASSETS FREE AND CLEAR, (II) APPROVING BID PROCEDURES IN CONNECTION WITH THE SALE, (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS AND LEASES AND APPROVING THE PROCEDURES TO BE EMPLOYED WITH ASSUMPTION AND ASSIGNMENT, (IV) APPROVING DEBTOR'S FORM OF NOTICE, AND (V) GRANTING RELATED RELIEF

32.     The Trustee contends that Section 363(f) is satisfied.  While there are several creditors claiming an interest in the estate's movable property, the estate is not selling movable property, as the Lease constitutes a real property right in Louisiana.   Further, as previously described, there are no creditors with an interest in the estate's real property interest in the Lease, other than Purchaser, and Purchaser's Secured Claim is provided for herein.

33.     Attached hereto as **Exhibit 9** is the Trustee's Mennonite notice list of entities asserting perfected security interests against the Debtor.  Notwithstanding the Trustee's mortgage and lien analysis, the Trustee intends to provide notice to all creditors on the Mennonite list, which includes:  (i) all persons or entities shown on the search of immovable property records attached as Exhibit 4 with an interest in the Lease; (ii) all persons or entities shown on the UCC search attached as Exhibit 7; (iii) the Overriding Royalty Parties; and (iv) all parties to the Lease Operating Agreement.

34.     The Trustee requests that the Court approve the Sale of the Purchased Assets as free and clear on any liens, claims and interests whether now known, with any such liens, claims and interests attaching instead to the proceeds of any such Sale.

### III.     Approval of Bid Procedures

35.     The Trustee requests that this Court approve the attached Bid Procedures for the implementation of the Sale process.[26]  The Bid Procedures provide a (a) structured marketing and overbid qualification process, (b) overbid and auction methodology and (c) bid selection and closing framework. The Bid Procedures are summarized as follows:

---

[26] Capitalized terms contained in the summary of the Bid Procedures in this paragraph 35 derive from the proposed Bid Procedures Order.

MOTION FOR THE ENTRY OF ORDERS (I) APPROVING THE SALE OF ASSETS FREE AND CLEAR, (II) APPROVING BID PROCEDURES IN CONNECTION WITH THE SALE, (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS AND LEASES AND APPROVING THE PROCEDURES TO BE EMPLOYED WITH ASSUMPTION AND ASSIGNMENT, (IV) APPROVING DEBTOR'S FORM OF NOTICE, AND (V) GRANTING RELATED RELIEF

a. **Due Diligence**. The Bid Procedures establish a procedure for parties interested in the Purchased Assets to gain access to due diligence materials needed to review prior to making an "as is, where is" offer.

b. **Qualified Bidders**. In order to qualify as a bidder for the Purchased Assets (to be a "<u>Qualified Bidder</u>"), the Bid Procedures require that interested parties (other than Purchaser):

    i. Provide an executed confidentiality agreement;

    ii. Provide a $50,000.00 deposit that remains non-refundable through the closing of the Sale if they are selected as the Successful or Back-up Bidder, and

    iii. Provide an executed asset purchase agreement on substantially the terms of, or on terms more favorable to the Trustee than, those set forth in the Overbid Agreement (attached to the Bid Procedures Order as Exhibit "A") which Overbid Agreement shall:

        1. specify the amount of cash or other form of consideration acceptable to the Trustee offered by the bidder for the Purchased Assets, with a minimum initial bid comprised of: (i) the amount of the original bid of $550,000.00, plus (ii) Purchaser's Secured Claim of $55,380.63; plus (iii) the $25,000 minimum initial overbid increment; for a total amount of $630,380.63 ((i),(ii) and (iii) collectively are the "<u>Minimum Overbid</u>");

        2. constitute an irrevocable offer by such the bidder to complete its proposed purchase upon the terms set forth therein, and must be irrevocable until closing of the Sale of the Purchased Assets to the Successful Bidder;

        3. include a copy of a board resolution or similar document demonstrating the authority of the bidder to submit an offer to purchase the Purchased Assets on the terms proposed by such the bidder and identifies the officer(s) or authorized agent(s) appearing on behalf of the bidder;

        4. include information demonstrating to the Trustee that the bidder has the financial wherewithal to close the transaction and

        5. acknowledge that it will not be entitled to a break-up fee, termination fee, expenses, or substantial contribution claim of any type.

16

MOTION FOR THE ENTRY OF ORDERS (I) APPROVING THE SALE OF ASSETS FREE AND CLEAR, (II) APPROVING BID PROCEDURES IN CONNECTION WITH THE SALE, (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS AND LEASES AND APPROVING THE PROCEDURES TO BE EMPLOYED WITH ASSUMPTION AND ASSIGNMENT, (IV) APPROVING DEBTOR'S FORM OF NOTICE, AND (V) GRANTING RELATED RELIEF

17-51280 - #45  File 04/19/18  Enter 04/19/18 16:13:06  Main Document  Pg 16 of 26

iv. Submit a bid of at least the Minimum Bid by no later than [••] [•].m. CST, [••], via email to dstewart@stewartrobbins.com, to be eligible to participate in the Auction of the Purchased Assets.

c. **Credit Bidding**. The Bid Procedures does not allow credit bidding, except for Purchaser's Secured Claim.

d. **No Bids/One Qualified Bid**. In the event the Trustee does not receive a Qualified Bid in addition to Purchaser, the Trustee shall request at the Sale Hearing that the Bankruptcy Court approve the Sale of the Purchased Assets to Purchaser and request that the Sale Order be immediately effective upon entry.

e. **The Auction**. The Bid Procedures establish an auction process, should there be more than one Qualified Bidder. The Auction will occur at [••]:00 [•].m. in open court on the day of the Sale Hearing. After announcing the current high bid, the Trustee will preside over the Auction initially using reasonable minimum bidding increments (over and above the Minimum Overbid), ultimately leading to the selection of a Successful Bidder and Back-up Bidder.

f. **Court Approval of Successful and Back-up Bidders.** Immediately after the Auction in open court, the Trustee will present the bids he considers the Successful and Back-up Bids to the court for approval.

g. **Failure to Consummate Purchase**. Should the Successful Bidder fail to consummate the Sale within five (5) days of the issuance of the Sale Consummation Order, the Trustee will call upon the Back-up Bidder to close the Sale and the Successful Bidder shall forfeit its Deposit. Should the Back-up Bidder fail to close the Sale, the Back-up Bidder will likewise forfeit its deposit.

The Bidding Procedures also provide the Trustee with the reasonable discretion to waive and/or alter these rules and requirements if in the interest of the Trustee's estate.[27]

36. "When conducting an asset sale, the ultimate responsibility of the debtor, and the primary focus of the bankruptcy court, is the maximization of the value of the assets sold."[28] In

---

[27] This section is intended as a summary. For a full recitation of all terms and conditions, parties should consult the proposed Bid Procedures Order attached hereto.

[28] John J. Jerome & Robert D. Drain, *Bankruptcy Court is Newest Arena for M&A Action*, N.Y.L.J., June 3, 1991.

furtherance of that goal, bidding procedures, such as those proposed here, may be used in court-supervised asset sales because they streamline the acquisition process, "help to provide an adequate basis by which to compare offers" and ultimately, maximize value.[29]

37.     The Bid Procedures are reasonably calculated to encourage a buyer to submit a final bid within the range of reasonably anticipated values.

38.     The Trustee believes that the Bid Procedures are appropriate under 11 U.S.C. §§ 105 and 363 to ensure that the bid process is fair and reasonable and will yield the maximum value for the estate and its creditors. The Bid Procedures proposed herein are designed to maximize the value received for the Purchased Assets by facilitating a competitive bid process in which all potential bidders are encouraged to participate and submit competing bids.

39.     The Bid Procedures provide potential bidders with sufficient notice and an opportunity to acquire information necessary to submit a timely and informed bid. Thus, the Trustee and all parties in interest can be assured that the consideration for the Purchased Assets will be fair and reasonable. At the same time, the Bid Procedures provide the Trustee with the opportunity to consider all competing offers and to select, in his reasonable business judgment the highest and best offer for the Purchased Assets.

40.     The Trustee submits that the Bid Procedures proposed herein are fair and appropriate under the circumstances, consistent with the procedures routinely approved by courts in this state and in the best interest of the Estate. The Trustee believes that it is imperative that he promptly move forward in hope that higher and better offers are generated for the Purchased

---

[29] *See id. See also In re Integrated Res., Inc.*, 147 B.R. 650, 659 (S.D.N.Y. 1992) (bidding procedures "are important tools to encourage bidding and to maximize the value of the debtor's assets.").

18

MOTION FOR THE ENTRY OF ORDERS (I) APPROVING THE SALE OF ASSETS FREE AND CLEAR, (II) APPROVING BID PROCEDURES IN CONNECTION WITH THE SALE, (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS AND LEASES AND APPROVING THE PROCEDURES TO BE EMPLOYED WITH ASSUMPTION AND ASSIGNMENT, (IV) APPROVING DEBTOR'S FORM OF NOTICE, AND (V) GRANTING RELATED RELIEF

17-51280 - #45  File 04/19/18  Enter 04/19/18 16:13:06  Main Document  Pg 18 of 26

Assets. Accordingly, the Bid Procedures were developed consistent with the Trustee's need to expedite the Sale process, but with the objective of promoting further active bids that will result in the highest or better offer for the Purchased Assets. The Bid Procedures are designed to facilitate the orderly, yet competing, bidding to maximize the net value realized from the Sale by the Estate. In particular, the Bid Procedures contemplate an auction process with minimum (but appropriate) barriers to entry and provide potential bidding parties with sufficient time to perform due diligence and acquire the information necessary to submit a timely and well-informed bid.

41.     At the same time, the Bid Procedures provide the Trustee with an adequate opportunity to consider competing bids and select the highest and best offer for the completion of the Sale. Entering into the Stalking Horse Agreement with Purchaser ensures the Estate obtains fair market value by setting a minimum purchase price that will be tested in the marketplace. As such, the Trustee's creditors can be assured that, taking into account the financial condition of the Trustee and the economy, the consideration obtained will be fair and reasonable and at or above market.

## IV.     Assumption and Assignment

42.     By this motion, the Trustee requests the assumption of the executory contracts pursuant to 11 U.S.C. § 365 and FED. R. BANKR. P. 6006 and 9014, and the assignment to the Successful Bidder in association with the purchase of the Purchased Assets. In association therewith, the Trustee seeks approval of the Assignment Procedures, which will govern the determination any cure payments and objections.

MOTION FOR THE ENTRY OF ORDERS (I) APPROVING THE SALE OF ASSETS FREE AND CLEAR, (II) APPROVING BID PROCEDURES IN CONNECTION WITH THE SALE, (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS AND LEASES AND APPROVING THE PROCEDURES TO BE EMPLOYED WITH ASSUMPTION AND ASSIGNMENT, (IV) APPROVING DEBTOR'S FORM OF NOTICE, AND (V) GRANTING RELATED RELIEF

17-51280 - #45  File 04/19/18  Enter 04/19/18 16:13:06  Main Document  Pg 19 of 26

43.    The following Assignment Procedures shall govern the assumption and assignment of the Assumed Contracts and Assumed Leases in connection with the Sale of the Purchased Assets to the Successful Bidder:

    a. Not later than fourteen (14) days prior to the Sale Hearing (as may be adjourned from time to time), the Trustee shall file with the Court a list (the "Cure Schedule") identifying such contracts and leases which may constitute Assumed Contracts and Assumed Leases in connection with the Sale and the amounts necessary to cure defaults and/or provide compensation or adequate assurance of compensation for actual pecuniary loss resulting from a default at the time of assumption as determined by the Trustee (such amounts, "Cure Payment Liability"), with the Purchaser to pay any such Cure Payment Liabilities for any Assumed Contracts and any Assumed Leases. The Trustee shall serve all counterparties to such contracts and leases with the Assignment Notice, specifically stating that the Trustee is or may be seeking the sale, assumption and assignment of such contracts and leases and notifying such parties of the deadline for objecting (a "Cure/Assignment Objection") to the amount of any Cure Payment Liability related thereto, which deadline shall be three (3) business days prior to the Sale Hearing, so as to enable any such party to object to the proposed Cure Payment Liability and the Court to determine such Cure Payment Liability as promptly as is reasonably possible.

    b. In cases in which the Trustee is unable to establish that a default exists, the relevant Cure Payment Liability shall be set at $0.00 in the Assignment Notice.

    c. Notwithstanding anything herein to the contrary, the Trustee may, from time to time, modify the Cure Schedule to add or remove a contract or lease counterparty or to modify the proposed Cure Payment Liability with respect to any counterparty. The non-debtor counterparty to any such contract or lease will be provided written notice of any such modification and at least fourteen (14) days advance notice of its deadline to object to such modification, and the Trustee will seek to set any such objection for hearing before the Court as promptly as is reasonably possible.

44.    Pursuant to Section 365 of the Bankruptcy Code, the Trustee can assume or reject any unexpired lease or executory contract. But if there has been a default, the Trustee can only assume: after curing any default or providing adequate assurances of promptly curing any default; and (ii) providing adequate assurances of future performance. 11 U.S.C. §§ 365(a), 365(b) and

MOTION FOR THE ENTRY OF ORDERS (I) APPROVING THE SALE OF ASSETS FREE AND CLEAR, (II) APPROVING BID PROCEDURES IN CONNECTION WITH THE SALE, (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS AND LEASES AND APPROVING THE PROCEDURES TO BE EMPLOYED WITH ASSUMPTION AND ASSIGNMENT, (IV) APPROVING DEBTOR'S FORM OF NOTICE, AND (V) GRANTING RELATED RELIEF

365(b)(C). The Trustee's decision to assume or reject agreements under § 365 is governed by the business judgment test.[30]

45. The business judgment standard mandates that a court approve a trustee's business decision unless the decision is the product of bad faith, whim or caprice with approval withheld if the "judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code." [31]

46. The Trustee submits that the assumption and assignment of the Contracts and Leases is in the best interests of the estate. The Contracts and Leases were all utilized in the Debtor's operations. The assumption and assignment to the Successful Bidder will help maximize the value of the Purchased Assets.

## V. Relief from Bankruptcy Rule 6004(h) is Appropriate

47. Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, lease of property… is stayed until the expiration of fourteen (14) days after entry of the order, unless the court orders otherwise." FED. R. BANKR. P. 6004(h).

48. All creditors and interested parties will receive notice of the Sale or a competing transaction and will be provided with an opportunity to be heard. The Trustee submits that such notice is adequate for entry of an order approving this motion and waiving the fourteen (14) days waiting period under Bankruptcy Rule 6004(h). Otherwise, the Trustee would need to further compress the notice period to accommodate the fourteen (14) day stay.

---

[30] *Richmond Leasing Company v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985).

[31] *See Lubrizol Enters. v. Richmond Metal Finishes*, 756 F.2d 1043, 1047 (4th Cir. 1985), *cert. denied*, 475 U.S. 1057 (1986); *Allied Technology, Inc. v. R.B. Brueman & Sons*, 25 B.R. 484, 495 (Bankr. S.D. Ohio 1982).

MOTION FOR THE ENTRY OF ORDERS (I) APPROVING THE SALE OF ASSETS FREE AND CLEAR, (II) APPROVING BID PROCEDURES IN CONNECTION WITH THE SALE, (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS AND LEASES AND APPROVING THE PROCEDURES TO BE EMPLOYED WITH ASSUMPTION AND ASSIGNMENT, (IV) APPROVING DEBTOR'S FORM OF NOTICE, AND (V) GRANTING RELATED RELIEF

## VI.    Purchaser Acted in Good Faith

49.    A condition to the consummation of the purchase of the Purchased Assets is that the Court find that the ultimate purchaser has acted in "good faith" within the meaning of 11 U.S.C. § 363(m). Section 363(m) provides that "[t]he reversal or modification on appeal of an authorization under [section 363(b) or (c)] of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith."[32]

50.    The good-faith requirement in § 363(m) is not specifically defined. Many courts turn to "traditional equitable principles and [hold] that the phrase encompasses one who purchases in good faith and for value."[33] "Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the debtor, or an attempt to take grossly unfair advantage of other bidders.'"[34] "The requirement that a purchaser act in good faith, of course, speaks to the integrity of his conduct in the course of the sale proceedings."[35] The good-faith requirement prohibits "fraudulent, collusive actions specifically intended to affect the sale price or control the outcome of the sale."[36]

---

[32] 11 U.S.C. § 363(m).

[33] *Hytken v. Williams*, 2007 U.S. Dist. LEXIS 27671, *14 (S.D. Tex. Mar. 30, 2007) (quoting *In re Colony Hill Assocs.*, 111 F.3d 269, 276 (2d Cir. 1997), *aff'd*, 2008 U.S. App. LEXIS 12240 (5th Cir. June 6, 2008) (per curiam).

[34] *Hytken*, 2007 U.S. Dist. LEXIS 27671 at **14-15 (quoting *Dick's Clothing & Sporting Goods, Inc. v. Phar-Mor, Inc.*, 212 B.R. 283, 290 (N.D. Ohio 1997) (quoting *In re Rock Indus. Machinery Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978))).

[35] *Id.* at *15 (quoting *Rock Indus.*, 572 F.2d at 1198).

[36] *Id.* (quoting *In re Made in Detroit, Inc.*, 414 F.3d 576, 581 (6th Cir. 2005)).

22

MOTION FOR THE ENTRY OF ORDERS (I) APPROVING THE SALE OF ASSETS FREE AND CLEAR, (II) APPROVING BID PROCEDURES IN CONNECTION WITH THE SALE, (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS AND LEASES AND APPROVING THE PROCEDURES TO BE EMPLOYED WITH ASSUMPTION AND ASSIGNMENT, (IV) APPROVING DEBTOR'S FORM OF NOTICE, AND (V) GRANTING RELATED RELIEF

51.     A bankruptcy court is not required to make an explicit finding of good faith in order to authorize a sale under the Bankruptcy Code.[37] Although the Bankruptcy Code does not define "good faith purchaser," courts interpreting Section 363(m) of the Bankruptcy Code have held that "to show lack of good faith [a party] must show fraud, collusion… or an attempt to take grossly unfair advantage of other bidders."[38] Yet, because there is no bright line test, courts examine the facts of each case by concentrating on the "integrity of [an actor's] conduct during the sale proceedings."[39]

52.     Under these standards – and by any other – the Purchaser has acted in good faith. The Stalking Horse Agreement, and the Sale of the Purchased Assets pursuant thereto, is the product of an open market sale. The consideration to be received by the estate is substantial, fair and reasonable. The Trustee will supplement this with any additional relevant facts following the Sale Consummation Hearing, additional facts will be shown. At such time, this Court should find that the Purchaser or other Successful Bidder should be considered a "good faith purchaser" within the meaning of § 363(m) with respect to the Purchase Agreement and the Sale of the Purchased Assets.

---

[37] *See In re Zinke*, 97 B.R. 155, 156 (E.D.N.Y. 1989) (finding that a duty to make an explicit finding of good faith before permitting a sale "has not been imposed by the Second Circuit or the United States Supreme Court").

[38] *In re Coated Sales, Inc.*, No. 89 Civ. 37-4 (KMW), 1990 WL 212899 (S.D.N.Y. Dec. 13, 1990). *See also In re Sasson Jeans, Inc.*, 90 B.R. 608, 610 (S.D.N.Y. 1988) (quoting *In re Bel Air Asocs., Ltd.*, 706 F. 2d 301, 305 (10th Cir. 1983)).

[39] *In re Pisces Leasing Corp.*, 66 B.R. 671, 673 (E.D.N.Y. 1986) (quoting *Rock Indus.*, 572 F.2d at 1198). *See also In re Abbotts Dairies of Pa., Inc.*, 788 F. 2d 143, 147 (3d Cir. 1986) ("The requirement that a purchaser act in good faith…speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.") (citations omitted).

## VIII. Notice

53.    The Trustee intends to notice a full copy of this motion and exhibits on the (a) United States Trustee, (b) all potential holders of liens and interests against property of the Estate of which the Trustee is aware according to a review of current available information records, (c) all creditors on the Trustee's mailing matrix, (d) all parties that have requested notice in this case and (e) all counterparties to any executory contracts to be assumed and assigned.

54.    In addition, the Trustee proposes to provide the following:

a.    The Sale Notice is reasonably calculated to provide parties in interest with proper notice of the potential Sale of the Purchased Assets, the related Bid Procedures, the Sale Hearing, the structure of the Sale and related implication on interested parties, including, without limitation, creditors, customers, suppliers and employees.

b.    The Assignment Notice is reasonably calculated to provide all counterparties to the Assumed Contracts and Assumed Leases with proper notice of the potential assumption and assignment of their executory contracts or unexpired leases and the proposed amount necessary to cure any existing default therein relating thereto, as well as the Assignment Procedures.

**WHEREFORE**, the Trustee requests the entry of two Orders:

1.    The first order (the Bid Procedures Order) (a) authorizing and approving bid procedures (the Bid Procedures) to be employed in connection with the proposed Sale and transfer (the Sale) of the assets (the Purchased Assets) of the Trustee through either the (i) Stalking Horse Agreement or (ii) a conformed APA, substantially in the form attached to the Bid Procedures Order as Exhibit "A" (the Overbid Agreement), (b) scheduling an auction (the Auction) and a hearing (the Sale Hearing) within sixty (60) days of the Petition Date to consider approval of the Sale,

MOTION FOR THE ENTRY OF ORDERS (I) APPROVING THE SALE OF ASSETS FREE AND CLEAR, (II) APPROVING BID PROCEDURES IN CONNECTION WITH THE SALE, (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS AND LEASES AND APPROVING THE PROCEDURES TO BE EMPLOYED WITH ASSUMPTION AND ASSIGNMENT, (IV) APPROVING DEBTOR'S FORM OF NOTICE, AND (V) GRANTING RELATED RELIEF

(c) authorizing and approving procedures (the Assignment Procedures) to be employed in connection with the assumption and assignment of certain contracts (the Assumed Contracts) and leases (the Assumed Leases) of the Trustee, (d) approving the manner and form of notice of the Auction with respect to the Sale, the Sale Hearing and the Assignment Procedures, substantially in the form attached to the Bid Procedures Order as Exhibit "B" (the Sale Notice) and Exhibit "C" (the Assignment Notice) and (e) granting related relief. The Trustee requests a hearing on the Bid Procedures Order on a special setting as a first day order and intends to move separately for such a hearing.

2. The second order (the Sale Order) (a) authorizing the Sale of the Purchased Assets to the highest and best bidder, free and clear of liens, claims and interests, with liens, claims and interests attaching to the proceeds, (b) approving the Purchase Agreement of the (ii) the highest and best bidder and (ii) the second highest and best bidder; (c) determining that the Successful Bidder and Backup Bidder are good faith purchasers pursuant to 11 U.S.C. § 363(m); (d) approving the Assumption and Assignment of the Contracts and Leases; (e) abrogating the fourteen (14) day stay imposed by FED. R. BANKR. P. 6004(h); and (f) other related relief.

Respectfully Submitted,

**STEWART ROBBINS & BROWN LLC**
301 Main Street, Suite 1640
P. O. Box 2348
Baton Rouge, LA  70821-2348
(225) 231-9998 Telephone
(225) 709-9467 Fax

By:  /s/ Paul Douglas Stewart, Jr.
Paul Douglas Stewart, Jr. (La. #24661)(T.A.)
dstewart@stewartrobbins.com
William S. Robbins (La. #24627)

MOTION FOR THE ENTRY OF ORDERS (I) APPROVING THE SALE OF ASSETS FREE AND CLEAR, (II) APPROVING BID PROCEDURES IN CONNECTION WITH THE SALE, (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS AND LEASES AND APPROVING THE PROCEDURES TO BE EMPLOYED WITH ASSUMPTION AND ASSIGNMENT, (IV) APPROVING DEBTOR'S FORM OF NOTICE, AND (V) GRANTING RELATED RELIEF

wrobbins@stewartrobbins.com
Brandon A. Brown (La. #25592)
bbrown@stewartrobbins.com

*Counsel for Chapter 7 Trustee*