IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

|  |  |  |
|---|---|---|
| In re | ) | Chapter 7 |
|  | ) |  |
| Knight Resources, LLC, | ) | Case No. 17-51280 |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

**MOTION FOR THE ENTRY OF ORDER APPROVING THE SALE OF CERTAIN ASSETS FREE AND CLEAR OF LIENS AND INTERESTS**

Lucy G. Sikes, solely in her capacity as chapter 7 trustee (the "Trustee") for the estate of Knight Resources, LLC, submits this motion (the "Motion"), pursuant to 11 U.S.C. §§ 105, 363 and 365 of the United States Bankruptcy Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking the entry of an Order approving the sale of certain assets free and clear. In support, the Trustee represents:

**Jurisdiction and Venue**

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. The subject matter of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this district pursuant to 28 U.S.C. § 1408. The statutory predicates for the relief sought in this Motion include Bankruptcy Code §§ 105, 363 and 365 and Bankruptcy Rules 2002, 6004, 6006 and 9019.

**General Background**

1

2. This case was commenced on September 29, 2017 by the filing of a voluntary petition. The Trustee was appointed trustee on September 29, 2017 and remains the duly appointed Chapter 7 Trustee in this case.

3. The Debtor was in the business of oil and gas exploration and production. Over time, the Debtor acquired "working interests" in numerous "prospects," each comprised of oil and gas leases and wells. Each prospect is typically owned by multiple parties and governed by one or more joint operating agreements or similar contracts. Under each joint operating agreement, one party (referred to as the "operator") generally has the exclusive right to conduct operations. Each operator may drill several wells in an effort to discover commercial quantities of hydrocarbons. Upon a thorough review by the Trustee, it appears that the estate owns a working interest in numerous individual wells, including the working interest that she is selling through this motion.[1]

---

[1] For an overview of the estate's overall oil and gas holdings, *see* ¶¶ 3-19 of the Trustee's *Motion to Abandon Estate's Interests in Oil and Gas Property Under 11 U.S.C. § 554 and Notice of Rejection of Related Executory Contracts as a Matter of Law Under § 365(d)(1)* [Dkt. 26].

**MOTION FOR THE ENTRY OF ORDER APPROVING THE SALE OF CERTAIN ASSETS FREE AND CLEAR OF CLAIMS AND INTERESTS**

4.     The Trustee has diligently sought potential purchasers for the estate's assets and that search has recently culminated in that certain Asset Purchase Agreement (the "<u>Executed Purchase Agreement</u>," attached hereto as **Exhibit 1**) by and between the Trustee on the one hand, and Badger Oil Corporation (the "<u>Purchaser</u>"), on the other, dated as of May 10, 2018, with an effective date of March 1, 2018.

5.     A summary of the terms of the proposed sale to Purchaser under the Executed Purchase Agreement are as follows:[2]

| Term Summarized | Executed Purchase Agreement |
|---|---|
| "<u>Purchased Assets</u>" | S.L. 1249 No. 112, Calliou Island Field, Well Serial No. 247880, Terrebonne Parish, LA |
| "<u>Purchase Price</u>" | Cash of $20,000.00 |
| "<u>Deposit</u>" | Cash of $2,000.00 |
| "<u>Closing</u>" | The sale of the Purchased Assets shall be closed within five (5) business days from the entry of the Sale Order. |

---

[2] This section is intended as a summary. For a full recitation of all terms and conditions, parties should consult the Executed Purchase Agreement attached hereto. In the event of any conflict between the terms it and any Order of this Court, the Order shall control.

**Relief Requested**

6. The Debtor seeks the entry an order (the "<u>Sale Order</u>,") (a) authorizing the Sale of the Purchased Assets to the Purchaser, free and clear of liens, claims and interests, with liens, claims and interests attaching to the proceeds, by and through the relevant Purchase Agreement; (b) approving the Executed Purchase Agreement; (c) determining that the Purchaser is a good faith purchaser pursuant to 11 U.S.C. § 363(m); (d) abrogating the fourteen (14) day stay imposed by Fed. R. Bankr. P. 6004(h); and (e) other related relief.

### I. Approval of the Sale under Section 363(b)

7. This Motion contemplates that the Successful Bidder (as defined in paragraph 32) will buy the Purchased Assets through the Executed Purchase Agreement (or Overbid Purchase Agreement as defined in paragraph 32). This purchase will be accomplished pursuant to 11 U.S.C. § 363, which provides that the Trustee, "after notice and a hearing, may […] sell […], other than in the ordinary course of business, property of the estate."[3]

8. The Court should approve the Sale of the Purchased Assets to Purchaser (or other Successful Bidder) if it finds that the Trustee demonstrates a sound business reason for the sale and the parties acted in good faith to sell the Purchased Assets at a fair and reasonable price.[4]

---

[3] 11 U.S.C. § 363(b)(1). *See Stephens Indus. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986) ("bankruptcy court can authorize a sale of all a Chapter 11 debtor's assets under [Section] 363(b)(1) when a sound business purpose dictates such action."); *In re Gucci*, 126 F. 3d 380, 387 (2d Cir. 1997) ("A sale of a substantial part of a Chapter 11 estate may be conducted if a good business reason exists to support it."); *In re Lionel Corp.*, 722 F. 2d 1063, 1071 (2d Cir. 1983); *In re Chateaugay Corp.*, 973 F. 2d 141, 143 (2d Cir. 1992); *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct.").

[4] *See In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983) (holding that the proper standard to use when considering a proposed motion to sell is the business judgment test); *In re Continental Air Lines, Inc.*, 780 F.2d 1223 (5th Cir. 1986) (following *Lionel* in requiring a "business justification for using, selling, or leasing the property outside the ordinary course of business"). *See also In re 240 N. Brand Partners*, 200 B.R. 653, 659 (9th Cir. B.A.P. 1996)

4

Section 105(a) provides in relevant part that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."[5]

9. Courts typically consider the following four factors in determining whether a proposed sale satisfies this standard: (a) whether a sound business justification exists for the sale, (b) whether adequate and reasonable notice of the sale was given to interested parties, (c) whether the sale will produce a fair and reasonable price for the property, and (d) whether the parties have acted in good faith.[6]

10. Once a trustee articulates a valid business reason for a sale, the business judgment rule acts as a presumption that the trustee has acted on an informed basis, in good faith, and in the honest belief that the sale is in the best interests of the estate.[7]

11. The Trustee's decision to sell the Purchased Assets is based on her sound business judgment. The Trustee seeks to liquidate the estate so that she may justly and equitably compensate creditors. The sale of the Purchased Assets will generate value for the estate, and payment to the holders of allowed claims.

12. Because of the Trustee's marketing efforts, the Sale will produce a fair and reasonable price for the Purchased Assets. The Purchased Assets have been exposed to the market for a considerable length of time as the Trustee has solicited offers from all of the estate's related

---

(citing to *Lionel* for proposition that "debtors who wish to utilize section 363(b) to dispose of property of the estate must demonstrate that such disposition has a valid business justification.").

[5] 11 U.S.C. § 105(a).

[6] *See, e.g., In re Weatherly Frozen Food Group, Inc.*, 149 B.R. 480, 483 (Bankr. N.D. Ohio 1992); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991).

[7] *See In re Gulf States Steel Inc. of Ala.*, 285 B.R. 497, 514 (Bankr. N.D. Ala. 2002) ("The Trustee is responsible for the administration of the estate and his or her judgment on the sale and the procedure for the sale is entitled to respect and deference from the Court, so long as the burden of giving sound business reasons is met.").

5

MOTION FOR THE ENTRY OF ORDER APPROVING THE SALE OF CERTAIN ASSETS FREE
AND CLEAR OF CLAIMS AND INTERESTS

working interest holders and operators. The Trustee pre-selected for these parties because they are already obligated on the P&A liability associated with the various interests. In addition, the proposed Sale will now be further exposed to the market through the instant motion, notice of which will be provided to the working interest holders and operators related to the Purchased Assets. Through this process the Trustee is assured of achieving the maximum value for the Purchased Assets.

13. The parties have acted in good faith. The Executed Purchase Agreement is the culmination of the Trustee's search for a buyer and was extensively negotiated at arms-length between the parties. The Purchaser and the Trustee had no connection whatsoever prior to the commencement of negotiations between them.

14. Here, each of the preceding four factors has been satisfied. The Trustee currently has inadequate liquidity to operate and is tasked with liquidating the Purchased Assets. The orderly sale of the Purchased Assets will provide cash for the benefit of the creditors. The Trustee will be providing adequate and reasonable notice to interested parties of the opportunity to object to the Sale of those assets or to provide a higher purchase price.[8] The procedure proposed herein will provide for an open and competitive bidding process for the Purchased Assets. The Trustee is proceeding in good faith and asserts that the Purchaser has acted in good faith. Courts generally

---

[8] *See*, *e.g.*, *Folger Adam Security Inc. v. DeMatteis/MacGregor*, 209 F. 3d 252, 265 (3d Cir. 2000) (stating that notice is sufficient if it includes "the time and place of any public sale, the terms and conditions of any private sale, states the time for filing objections and, if real estate is being sold, provides a general description of the property"); *In re WBQ P'ship*, 189 B.R. 97, 103 (Bankr. E.D. Va. 1995) ("notice is sufficient if it includes the terms and conditions of the sale, if it states the time for filing objections, and if the estate is selling real estate, it generally describes the property") (quoting *In re Karpe*, 84 B.R. 926, 929 (Bankr. M.D. Pa. 1988)).

conclude that parties have acted in good faith with respect to a proposed sale if the purchase price is adequate and reasonable and the terms of the sale are disclosed fully.[9]

15. As such, the Court should approve the Sale of the Purchased Assets pursuant to the procedures proposed herein.

## II. Approval of the Sale Under § 363(f)

16. Pursuant to this motion, the Trustee also requests authorization to sell the Purchased Assets free and clear of any liens, claims, encumbrances, or other interests that may be asserted against the Purchased Assets. Section 363(f) provides for the sale of property of the estate by the debtor "free and clear of any interest in such property of any entity other than the estate."[10] Such "free and clear" provision permits a sale free and clear of interests beyond liens and permits a sale free and clear of claims,[11] contractual rights,[12] and statutory interests.[13]

17. Section 363(f) permits a debtor to sell "free and clear" of an interest if any one of the following conditions is satisfied:

1) applicable nonbankruptcy law permits the sale of such property free and clear of such interest;

2) the lienholder or claimholder consents;

3) such interest is a lien, and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

---

[9] *See*, *e.g.*, *In re Abbotts Dairies of Pa., Inc.*, 788 F. 2d 143, 149-50 (3d Cir. 1986).

[10] 11 U.S.C. § 363(f).

[11] *In re Trans World Airlines, Inc.*, 322 F.3d 283 (3d. Cir. 2003).

[12] *See Unsecured Creditors' Comm. of Robert L. Helms Constr. & Development v. Southmark Corp.*, 139 F.3d 702 (9th Cir. 1998).

[13] *See Precision Indus., Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 543-548 (7th Cir. 2003)).

7

4) such interest is in bona fide dispute; or

5) the lienholder or claimholder could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.[14]

In addition, a court may authorize the sale of a debtor's assets free and clear of any liens, claims, or encumbrances under Section 105 of the Bankruptcy Code.[15]

18. While Section 363(f) permits the sale of assets "free and clear of any interests," the term "any interest," as used in section 363(f), is not defined anywhere in the Bankruptcy Code.[16] In *Folger Adam*, the Third Circuit specifically addressed the scope of the term "any interest."[17] The Third Circuit observed that while some courts have "narrowly interpreted that phrase to mean only *in rem* interests in property," the trend in modern cases is towards "a broader interpretation which includes other obligations that may flow from ownership of the property."[18] As determined by the Fourth Circuit in *In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 581-582 (4th Cir. 1996), a case cited approvingly and extensively by the Third Circuit in *Folger Adam*, the scope of 11 U.S.C. § 363(f) is not limited to *in rem* interests. Thus, the Third Circuit in *Folger Adam* stated that *Leckie* held that the debtors "could sell their assets under § 363(f) free and clear of successor liability that otherwise would have arisen under federal statute."[19]

---

[14] 11 U.S.C. § 363(f).

[15] *See In re White Motor Credit Corp.*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) ("Authority to conduct such sales [free and clear of liens] is within the court's equitable powers when necessary to carry out the provisions of Title 11.").

[16] *Folger Adam Security v. DeMatteis/MacGregor, JV*, 209 F.3d 252, 259 (3d Cir. 2000).

[17] *Id*. at 258.

[18] *Id*. at 258 (citing 3 COLLIER ON BANKRUPTCY 363.06[1]).

[19] *Folger Adam*, 209 F.3d at 258.

19. Section 363(f) is drafted in the disjunctive. Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the Estate's Sale of the Purchased Assets free and clear of all interests and claims, except with respect to any interests and claims that may be assumed liabilities under the applicable Purchase Agreement.[20]

20. The Purchased Assets are comprised of the Estate's "Working Interest" in a Louisiana Oil and Gas Lease, namely S.L. 1249 No 112 (formerly S.L. 1249 #1 and S.L. 21137 #1), Calliou Island Field, Well Serial No. 247880, Terrebonne Parish, LA (the "Lease") and related rights and assets. The Estate's Working Interest in the Lease is created under that Joint Operating Agreement by and among various entities, dated February 18, 2014 ("Joint Operating Agreement" a filed memorandum copy of which is attached hereto as **Exhibit 2**). Louisiana and many other oil-producing states treat a mineral lease as a conveyance of a real property interest, such as a deed, creating a fee simple determinable estate in the lessee.[21]

21. In Louisiana, liens and mortgages affecting Oil and Gas leases are filed in the public records of the nearest parish, which in the case of the Lease, is Terrebonne. Attached hereto as **Exhibit 3** is the index result of the Trustee's search of the mortgage records affecting the real property being sold through this Motion. Of the items indicated in the attached search, only the Joint Operating Agreement would operate to create a lien on the Purchased Assets. Under the Joint Operating Agreement, the Debtor (and the other non-operating parties), grants to the operator, a lien on all of the Debtor's oil and gas rights under the Joint Operating Agreement, as

---

[20] *See Citicorp Homeowners Services, Inc. v. Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988).

[21] Compare *Texaco, Inc. v. Louisiana Land and Exploration Co.*, 136 B.R. 658 (M.D. La. 1992) (oil and gas leases are executory contracts) with *In re WRT Energy Corporation*, 202 B.R. 579 (Bankr. W.D. La. 1996) (the Court rejected the conclusion of the Court in *Texaco* and found that the oil and gas lease was not executory).

**MOTION FOR THE ENTRY OF ORDER APPROVING THE SALE OF CERTAIN ASSETS FREE AND CLEAR OF CLAIMS AND INTERESTS**

security for all obligations to the operator thereunder. The Joint Operating Agreement was filed in the records of Terrebonne Parish so as to perfect the lien in the Purchased Assets.

22. The Trustee is unaware of any existing secured or other claims asserted by the operator under the Joint Operating Agreement. At any rate, notice of this motion will be provided to such operator and all other parties to the Joint Operating Agreement.

23. Because Oil and Gas leases are generally treated as real property interests, the Trustee submits that filings under the Louisiana Uniform Commercial Code would be ineffective as to the Purchased Assets. In an abundance of caution, the Trustee also attaches hereto as **Exhibit 4,** the result of the Trustee's search of the uniform commercial code filings in Louisiana (the proper location for perfection of UCC security interests against the estate). None of the creditors shown in UCC filings have filed secured claims in this matter. Which are summarized as follows:

| Lien Filing Date | Number | Secured Party | Collateral |
|---|---|---|---|
| 6/14/12 | 51-5671 | Helis Oil & Gas | Oil & gas, proceeds, fixtures, movable property relating to Lease OCS-G 5502 |
| 6/27/13 | 17-1391823 | Wells Fargo, Assigned to Cantor Fitzgerald | All Assets |
| 2/8/16 | 55-1500085 | Operating Agreement parties | Lease OCS-G 19839, OA and all associated assets and proceeds |
| 8/10/16 | 55-1513929 | Lease Operating Agreement parties | OCS-G 252, SS 252, OA and all assets, equipment and agreements and associated production and proceeds |
| 4/7/17 | 28-498737 | First National Bank of Jeanerette | General Intangibles including certain insurance policies |

24. In addition, as shown on in the immovable property search, the Debtor also assigned various overriding royalty interests as to the Debtor's interest in the Lease, including the following (the "Overriding Royalty Parties"): (i) Assignment of Overriding Royalty Interest from Knight Resources, LLC, in favor of Strat Energy & Consulting, Inc. dated May 14, 2015; (ii) Assignment of Overriding Royalty Interest from Knight Resources, LLC, in favor of James A. Bibby dated May 14, 2015; (iii) Assignment of Overriding Royalty Interest from Knight Resources, LLC, in favor of Clifford T. Crowe dated May 14, 2015.

25. A royalty interest is an interest in oil and gas produced at the surface, free of the expense of production. In Louisiana, an overriding royalty is a nonpossessory "right to receive and collect a fraction or a percentage of the production of minerals . . . free of drilling and

production costs."[22] Since royalty interests affect the extracted minerals themselves, the royalty interests of the Overriding Royalty Parties do not encumber or otherwise attach to the proceeds of the sale of the Purchased Assets, as the Trustee is not selling extracted minerals.

26. It should be noted, however, that the Trustee is not by this Motion seeking to strip the Purchased Assets of the royalty interests of the Overriding Royalty Parties—only to proceed with the sale of the Purchased Assets and distribute the proceeds of such sale without regard to said royalty interests. Said royalty interests would continue to affect extracted minerals to the same extent as they did prior to the proposed sale.

27. In this case, sale under Section 363(f) "free and clear" of the above interests is appropriate because:

1) applicable nonbankruptcy law permits the sale of such property free and clear of such interest;

2) the lienholder or claimholder consents;

28. The Trustee contends that Section 363(f) is satisfied. While there are several creditors claiming an interest in the estate's movable property, the estate is not selling movable property, as the Lease constitutes a real property right in Louisiana. Further, as previously described, there are no known creditors with a secured claim in the estate's real property interest in the Lease, other than the operator under the Joint Operating Agreement, and the Trustee is unaware of any secured claim of same.

29. Attached hereto as **Exhibit 5** is the Trustee's Mennonite notice list of entities asserting perfected security interests against the Debtor. Notwithstanding the Trustee's mortgage

---

[22] *In re: ATP Oil & Gas, OHA Investment Corp. v. Schlumberger Technology Corp et. al*, No. 17-20224, p8, United States Court of Appeals, Fifth Circuit, April 17, 2018, citing William & Meyers, *Oil and Gas Law,* Sec. 418.1 (2017) and *Total E & P USA Inc. v. Kerr-McGee Oil and Gas Corp.*, 719 F3d 424 (5th Cir. 2013).

and lien analysis, the Trustee intends to provide notice to all creditors on the Mennonite list, which includes: (i) all persons or entities shown on the search of immovable property records attached as Exhibit 3 with an interest in the Lease; (ii) all persons or entities shown on the UCC search attached as Exhibit 4; (iii) the Overriding Royalty Parties; and (iv) all parties to the Joint Operating Agreement.

30. The Trustee requests that the Court approve the Sale of the Purchased Assets as free and clear on any liens, claims and interests whether now known, with any such liens, claims and interests attaching instead to the proceeds of any such Sale.

**III. Approval of Bid Procedures**

31. The Trustee plans to continue marketing the Purchased Assets through reasonable marketing efforts seeking overbids. Further, parties in interest will receive notice and copies of this Motion through the bankruptcy process.

32. The Trustee requests that parties interested in placing a competing bid ("Overbid") against that of the Purchaser be allowed to do so under the following conditions:

   a. Parties seeking to make an Overbid must utilize and abide by an overbid purchase agreement form (the "Overbid Purchase Agreement"). The Overbid Purchase Agreement will be identical in form to the Purchase Agreement, save the amount of the purchase price[23], and is available from undersigned counsel.

   b. The Overbid Purchase Agreement should be executed and returned to undersigned counsel at least seven (7) days prior to the scheduled hearing.

---

[23] In addition, the Overbid Purchase Agreement binds the bidder as a backup bidder, which is not the case for the Purchaser and the Executed Purchase Agreement.

c. Parties seeking to make an overbid must make the $2,000.00 deposit required in the Overbid Purchase Agreement, and further provide undersigned counsel with evidence of their ability to fund the purchase of the Purchased Asset. Such evidence may include, but is not limited to, the following verifiable documents: certified financial statements, prequalification letters from mortgage lenders combined with evidence of the purchaser's ability to fund the down payment, margin account balances, etc.

d. Initial Overbids must be comprised of: (i) the amount of the original bid, plus (ii) $2,500 minimum initial overbid increment, plus (iii) a three percent breakup fee; for a total amount of $22,500.00.

e. In the event of one or more Overbids (including the Purchaser), the Trustee or this Court may conduct an auction to determine the highest and best bidder.

f. The Trustee will evaluate Overbids using his business judgment. The Trustee will select not necessarily the highest bid, but the highest and best bid ("<u>Successful Bidder</u>") as the person or entity to which the Estate will propose that the Court sell the Purchased Assets.

g. The second highest and best bid, as determined by the Trustee in his business judgment, shall remain obligated to purchase the Purchased Assets at its last bid, as the "<u>Backup Bidder</u>.[24]" The Trustee may proceed to close with the Backup Bidder in the event that the sale of the Purchased Assets does not close with the Successful Bidder.

---

[24] The Purchaser shall not be obligated as Backup Bidder under the terms of the Executed Purchase Agreement.

**MOTION FOR THE ENTRY OF ORDER APPROVING THE SALE OF CERTAIN ASSETS FREE AND CLEAR OF CLAIMS AND INTERESTS**

33. The Trustee may waive and/or alter these rules and requirements if in the interest of the Trustee's estate.

34. The party (whether the Purchaser, or another person or entity submitting an Overbid) with which the Trustee closes the sale of the Purchased Assets shall be considered the Purchaser hereunder.

35. "When conducting an asset sale, the ultimate responsibility of the debtor, and the primary focus of the bankruptcy court, is the maximization of the value of the assets sold."[25] In furtherance of that goal, bidding procedures, such as those proposed here, may be used in court-supervised asset sales because they streamline the acquisition process, "help to provide an adequate basis by which to compare offers" and ultimately, maximize value.[26]

36. The sale process described above is reasonably calculated to encourage a buyer to submit a final bid within the range of reasonably anticipated values.

37. The Trustee believes that the sale process described above is appropriate under 11 U.S.C. §§ 105 and 363 to ensure that the bid process is fair and reasonable and will yield the maximum value for the estate and its creditors. The sale process described above is designed to maximize the value received for the Purchased Assets by facilitating a competitive process in which all potential bidders are encouraged to participate and submit competing bids.

38. The sale process described above provides potential bidders with sufficient notice and an opportunity to acquire information necessary to submit a timely and informed bid. Thus,

---

[25] John J. Jerome & Robert D. Drain, *Bankruptcy Court is Newest Arena for M&A Action*, N.Y.L.J., June 3, 1991.

[26] *See id. See also In re Integrated Res., Inc.*, 147 B.R. 650, 659 (S.D.N.Y. 1992) (bidding procedures "are important tools to encourage bidding and to maximize the value of the debtor's assets.").

the Trustee and all parties in interest can be assured that the consideration for the Purchased Assets will be fair and reasonable. At the same time, the sale process described above provides the Trustee with the opportunity to consider all competing offers and to select, in his reasonable business judgment the highest and best offer for the Purchased Assets.

39. The Trustee submits that the sale process described above is fair and appropriate under the circumstances, consistent with the procedures routinely approved by courts in this state and in the best interest of the Estate. Since the Purchased Assets are Oil and Gas interests, with uncertain and probably declining values, the Trustee believes that it is imperative that she promptly move forward in hope that higher and better offers are generated for the Purchased Assets. Accordingly, the sale process described above was developed consistent with the Trustee's need to expedite the Sale process, but with the objective of promoting further active Overbids that will result in the highest or better offer for the Purchased Assets. The sale process described above is designed to facilitate the orderly, yet competing, bidding to maximize the net value realized from the Sale by the Estate. In particular, it contemplates a process with minimum (but appropriate) barriers to entry and provide potential bidding parties with sufficient time to perform due diligence and acquire the information necessary to submit a timely and well-informed bid.

40. At the same time, the sale process described above provides the Trustee with an adequate opportunity to consider competing bids and select the highest and best offer for the completion of the Sale. Entering into the Executed Purchase Agreement with Purchaser or entering an Overbid Purchase Agreement with another bidder ensures the Estate obtains fair market value by setting a minimum purchase price that will be tested in the marketplace. As such, the estate's creditors can be assured that, taking into account the financial condition of the debtor and the economy, the consideration obtained will be fair and reasonable and at or above market.

### IV. Relief from Bankruptcy Rule 6004(h) is Appropriate

41. Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, lease of property… is stayed until the expiration of fourteen (14) days after entry of the order, unless the court orders otherwise." FED. R. BANKR. P. 6004(h).

42. All creditors and interested parties will receive notice of the Sale or a competing transaction and will be provided with an opportunity to be heard. The Trustee submits that such notice is adequate for entry of an order approving this motion and waiving the fourteen (14) days waiting period under Bankruptcy Rule 6004(h). Otherwise, the Trustee would need to further compress the notice period to accommodate the fourteen (14) day stay.

### V. Purchaser Acted in Good Faith

43. A condition to the consummation of the purchase of the Purchased Assets is that the Court find that the ultimate purchaser has acted in "good faith" within the meaning of 11 U.S.C. § 363(m). Section 363(m) provides that "[t]he reversal or modification on appeal of an authorization under [section 363(b) or (c)] of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith."[27]

44. The good-faith requirement in § 363(m) is not specifically defined. Many courts turn to "traditional equitable principles and [hold] that the phrase encompasses one who purchases in good faith and for value."[28] "Typically, the misconduct that would destroy a purchaser's good

---

[27] 11 U.S.C. § 363(m).

[28] *Hytken v. Williams*, 2007 U.S. Dist. LEXIS 27671, *14 (S.D. Tex. Mar. 30, 2007) (quoting *In re Colony Hill Assocs.*, 111 F.3d 269, 276 (2d Cir. 1997), *aff'd*, 2008 U.S. App. LEXIS 12240 (5th Cir. June 6, 2008) (per curiam).

faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the debtor, or an attempt to take grossly unfair advantage of other bidders.'"[29] "The requirement that a purchaser act in good faith, of course, speaks to the integrity of his conduct in the course of the sale proceedings."[30] The good-faith requirement prohibits "fraudulent, collusive actions specifically intended to affect the sale price or control the outcome of the sale."[31]

45. A bankruptcy court is not required to make an explicit finding of good faith in order to authorize a sale under the Bankruptcy Code.[32] Although the Bankruptcy Code does not define "good faith purchaser," courts interpreting Section 363(m) of the Bankruptcy Code have held that "to show lack of good faith [a party] must show fraud, collusion… or an attempt to take grossly unfair advantage of other bidders."[33] Yet, because there is no bright line test, courts examine the facts of each case by concentrating on the "integrity of [an actor's] conduct during the sale proceedings."[34]

---

[29] *Hytken*, 2007 U.S. Dist. LEXIS 27671 at **14-15 (quoting *Dick's Clothing & Sporting Goods, Inc. v. Phar-Mor, Inc.*, 212 B.R. 283, 290 (N.D. Ohio 1997) (quoting *In re Rock Indus. Machinery Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978))).

[30] *Id*. at *15 (quoting *Rock Indus.*, 572 F.2d at 1198).

[31] *Id*. (quoting *In re Made in Detroit, Inc.*, 414 F.3d 576, 581 (6th Cir. 2005)).

[32] *See In re Zinke*, 97 B.R. 155, 156 (E.D.N.Y. 1989) (finding that a duty to make an explicit finding of good faith before permitting a sale "has not been imposed by the Second Circuit or the United States Supreme Court").

[33] *In re Coated Sales, Inc.*, No. 89 Civ. 37-4 (KMW), 1990 WL 212899 (S.D.N.Y. Dec. 13, 1990). *See also In re Sasson Jeans, Inc.*, 90 B.R. 608, 610 (S.D.N.Y. 1988) (quoting *In re Bel Air Asocs., Ltd.*, 706 F. 2d 301, 305 (10th Cir. 1983)).

[34] *In re Pisces Leasing Corp.*, 66 B.R. 671, 673 (E.D.N.Y. 1986) (quoting *Rock Indus.*, 572 F.2d at 1198). *See also In re Abbotts Dairies of Pa., Inc.*, 788 F. 2d 143, 147 (3d Cir. 1986) ("The requirement that a purchaser act in good faith…speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.") (citations omitted).

46. Under these standards – and by any other – the Purchaser has acted in good faith. The Executed Purchase Agreement, and the Sale of the Purchased Assets pursuant thereto, is the product of an open market sale. The consideration to be received by the estate is substantial, fair and reasonable. The Trustee will supplement this with any additional relevant facts following the hearing. At such time, this Court should find that the Purchaser or other Successful Bidder should be considered a "good faith purchaser" within the meaning of § 363(m) with respect to the Purchase Agreement and the Sale of the Purchased Assets.

**VI. Notice**

47. The Trustee intends to notice a full copy of this motion and exhibits on the (a) United States Trustee, (b) all potential holders of liens and interests against property of the Estate of which the Trustee is aware according to a review of current available information records, (c) all creditors on the Trustee's mailing matrix, (d) all parties that have requested notice in this case and (e) all persons shown on Exhibit 5.

48. The notice contemplated herein is reasonably calculated to provide parties in interest with proper notice of the potential Sale of the Purchased Assets, the structure of the Sale and related implication on interested parties, including, without limitation, creditors, customers, and employees.

**WHEREFORE**, the Trustee requests the entry an Order: (a) authorizing the Sale of the Purchased Assets to the Purchaser , free and clear of liens, claims and interests, with liens, claims and interests attaching to the proceeds, (b) approving the Executed Purchase Agreement or Overbid

Purchase Agreement of the highest and best bidder and Backup Bidder; (c) determining that the Purchaser is a good faith purchaser pursuant to 11 U.S.C. § 363(m); (d) abrogating the fourteen (14) day stay imposed by FED. R. BANKR. P. 6004(h); and (e) other related relief.

                        Respectfully Submitted,

                        **STEWART ROBBINS & BROWN LLC**
                        301 Main Street, Suite 1640
                        P. O. Box 2348
                        Baton Rouge, LA 70821-2348
                        (225) 231-9998 Telephone
                        (225) 709-9467 Fax

By:    /s/ William S. Robbins
          Paul Douglas Stewart, Jr. (La. #24661)
          dstewart@stewartrobbins.com
          William S. Robbins (La. #24627)
          wrobbins@stewartrobbins.com
          Brandon A. Brown (La. #25592)
          bbrown@stewartrobbins.com

*Counsel for Chapter 7 Trustee*

20

**MOTION FOR THE ENTRY OF ORDER APPROVING THE SALE OF CERTAIN ASSETS FREE AND CLEAR OF CLAIMS AND INTERESTS**

17-51280 - #59  File 05/21/18  Enter 05/21/18 12:59:33  Main Document  Pg 20 of 20